UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| JANE DOE </br></br> Plaintiff </br></br> v. </br></br> CHESAPEAKE MEDICAL SOLUTIONS, LLC </br> CHESAPEAKE MEDICAL SOLUTIONS, P.A. </br> Both doing business as </br> Your Doc's In </br> 2425 N. Salisbury Blvd. </br> Salisbury, Maryland 21801 </br></br> <u>SERVE ON</u>: </br> Walter Gianelle, Resident Agent </br> 3676 Arrowsmith Drive </br> Salisbury, Maryland 21804 </br></br> AND </br></br> WALTER GIANELLE, M.D. </br> 2425 N. Salisbury Blvd. </br> Salisbury, Maryland 21801 </br></br> Defendants | Civil Action No.:_____ </br></br> **COMPLAINT** </br></br> **JURY TRIAL DEMAND** |

### **COMPLAINT AND JURY TRIAL DEMAND**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.* ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, as well as state law principles, seeking damages and other relief on behalf of a

former employee, Jane Doe.[1] This action seeks damages and other relief resulting from unlawful sexual harassment, medical malpractice and negligent retention and supervision committed in the course of Plaintiff's employment, in connection with her termination, and in connection with her status as a patient of Defendants.

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court over the sexual harassment claim is invoked pursuant to 28 U.S.C. §1343(a)(4), 42 U.S.C. §2000e-5(f) and 42 U.S.C. §1981a, all of which authorize this action. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claim that they form a part of the same case or controversy.

3.  The acts complained of were committed within the jurisdiction of the United States District Court for the District of Maryland, Northern Division.

4.  At all relevant times, Defendant Chesapeake Medical Solutions, LLC is and has been a Maryland limited liability company, doing business as Your Doc's In.

5.  At all relevant times, Defendant Chesapeake Medical Solutions, P.A., has been a Maryland professional association, which, along with Defendant Chesapeake Medical Solutions, LLC is also registered as doing business as Your Doc's In. Because both Defendants do business under the same name, they shall be collectively referred to herein as "YDI" or the "YDI Defendants."

---

[1] Because of the public interest in protecting the identities of vulnerable victims of sexual exploitation by their employers and physicians, the Plaintiff is utilizing a pseudonym.

6. YDI operates six urgent care medical facilities at various locations on the Eastern Shore of Maryland.

7. At all relevant times, Defendant Walter Gianelle, M.D. ("Gianelle") has been a physician. Also, at all relevant times, Gianelle has been the highest-ranking person, principal and alter-ego of the YDI organization.

8. At all relevant times, YDI continuously has been an employer engaged in an industry affecting commerce, and employing at least 15 employees.

9. Plaintiff is a female resident of Maryland who was employed to work at YDI, and who, in that role, performed services for both of the YDI Defendants. Plaintiff was also a patient of YDI and Gianelle.

10. More than 30 days prior to the institution of this lawsuit, Plaintiff filed a Charge of Discrimination alleging sexual harassment with the Baltimore office of the Equal Opportunity Commission ("EEOC"), which was cross-filed with the Maryland Commission on Civil Rights. The EEOC issued Plaintiff a Right to Sue letter. Therefore, all conditions precedent to the institution of this lawsuit for sexual harassment have been fulfilled.

11. The related state law claims are also ripe for determination in this Court, as an action was timely instituted in the Health Claims Alternative Dispute Resolution Office ("HCADRO"), a waiver was filed pursuant to § 3-2A-06B of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, and an Order of Transfer was issued by the HCADRO.

**FACTS COMMON TO ALL COUNTS**

12. YDI initially hired Plaintiff in or around 2011 to manage its Easton, Maryland urgent care medical facility. At the time of Plaintiff's initial hire, the Easton facility was plagued

3

with problems. Plaintiff's efforts at turning around the facility were so successful that under Plaintiff's management, the Easton facility became the premier facility of YDI, ultimately operating more efficiently, with lower staff turnover and minimal complaints. Plaintiff received praise for these efforts by Gianelle and others at YDI.

13. In or around 2013, Plaintiff became ill with a life-threatening health condition that required extended medical care at a major hospital in Baltimore, which care continued over a period of years. The medical care involved several surgeries including an organ transplant, chemotherapy, dialysis, and other extraordinary treatments, some of which resulted in complex complications. Gianelle became actively involved in Plaintiff's health care as one of her treating physicians. In that role, Gianelle became a trusted medical advisor and friend to Plaintiff.

14. Plaintiff was naturally drawn to a seemingly caring health care provider and boss who was taking an active interest in her complex medical issues, and providing her with a system of support. However, beginning in 2015, Gianelle sought to exploit both the employer-employee and physician-patient relationships of trust that he had built with Plaintiff, when he began to groom Plaintiff for sex by confiding in her about extremely personal sexual matters not ordinarily shared in a normal employer-employee or doctor-patient relationship, including discussing with her the details of his dissatisfaction with his marriage, and his plan to divorce his wife after their youngest child was in college. Gianelle further groomed Plaintiff by insinuating himself into every aspect of Plaintiff's deepest and most personal matters on a daily basis when she was extremely sick and therefore most vulnerable, to the point where Gianelle ultimately directed her work life, her personal life and aspects of her medical care.

15. In or around October 2015, while Plaintiff was still very sick, Gianelle proposed a secret affair with Plaintiff, promising to take care of Plaintiff and to protect her employment at YDI. It was at that time that the intimate relationship between Plaintiff and Gianelle began.

16. In her compromised health condition, Plaintiff was completely vulnerable and increasingly dependent on Gianelle for both her job and for important aspects of her local medical care on the Eastern Shore. She therefore was not in a position to refuse sex with Gianelle. Gianelle exploited that fact and his position of power over Plaintiff to initiate and continue the sexual relationship, repeatedly reinforcing his position of power by telling Plaintiff that he was the only person at YDI who was standing up for Plaintiff, and that he was the only job protection she had. Gianelle also repeatedly described himself to Plaintiff as her "muscle," who was the only one keeping her from losing her job at YDI.

17. Throughout the course of Plaintiff's protracted illness, Gianelle performed health care procedures on Plaintiff, sometimes demanding sex as a form of compensation afterwards. On one occasion, Plaintiff suffered a hernia, which Gianelle attempted to repair at YDI's Easton, Maryland clinic. The repair attempt was unsuccessful. Nevertheless, Gianelle demanded that Plaintiff have sexual intercourse with him in the clinic. No record was made of either Plaintiff's patient visit to YDI for the hernia or Gianelle's attempted repair of it. Gianelle also performed other medical procedures on Plaintiff for which no patient records were created. On one such occasion, Gianelle came to Plaintiff's home in order to check on her medical condition following her transplant surgery. Plaintiff was on pain medication, very weak, and under orders from her surgeon not to have sexual intercourse. Nevertheless, Gianelle demanded and received sex from Plaintiff at that visit, as well. After that visit, Gianelle also saw Plaintiff at YDI's Easton, Maryland

clinic in order to repair Plaintiff's surgical incision that had opened. Even though Plaintiff was still in no physical condition to have sexual intercourse following that procedure, and was still under the surgeon's instructions not to have sexual intercourse, Gianelle nevertheless demanded and received sex in the clinic, as a form of compensation for the procedure.

18. In 2016, another physician who practiced with Gianelle at YDI fired Plaintiff with no warning and no step discipline. Gianelle disagreed with the decision to fire Plaintiff, and in 2017, he arranged to have YDI re-hire Plaintiff. Soon thereafter, in July 2017, Gianelle promoted Plaintiff into a position as a higher-ranking manager of YDI. Throughout all this time, Gianelle continued his sexual relationship and physician-patient relationship with Plaintiff.

19. Gianelle abused his position of power and authority both as Plaintiff's manager and physician, and as the highest ranking person in the business, to create an unlawful sexually hostile work environment, to demand and obtain sexual favors as a condition of Plaintiff's employment or continued employment, and to keep Plaintiff in a humiliating and demeaning position in which she was constantly needy and dependent on Gianelle for her job security, for emotional support and for medical care. In her debilitated condition, Plaintiff believed that she had to comply with and do whatever it took to keep Gianelle happy with her because she desperately needed her job, his medical care and his emotional support.

20. In or around December 2017, Gianelle ended the sexual relationship with Plaintiff. Plaintiff was completely devastated when she realized that she had deluded herself into believing that her relationship with Gianelle was real, when in fact, it was just an exploitation of her by Gianelle, who was a skilled and powerful manipulator and predator.

21. Sex with Gianelle both in and out of the office was a *quid pro quo* condition of Plaintiff's re-employment and continued employment at YDI. Soon after the sexual relationship ended, so did the employment. In May 2018, YDI again terminated Plaintiff's employment, this time with the approval of Gianelle.

22. Gianelle had no boundary lines at work, and no separation between his sex life and his work life. Gianelle so intermingled his work life with his sex life that his behavior went past all boundaries of propriety, to the point where it was offensive, unwelcome and harassing. Before having a sexual relationship with Plaintiff, Gianelle also did so with at least one other YDI employee.

23. The workplace atmosphere caused by Gianelle's lack of boundaries and sexual behavior was sufficient to create a severe and pervasive hostile work environment for Plaintiff. After Gianelle ended the sex, he still expected Plaintiff to be complicit in covering up his numerous extramarital affairs from his wife as a condition of Plaintiff's continued employment. As a result of Gianelle's conduct, the workplace was suffused with a charged sexual atmosphere, particularly as it pertained to Plaintiff. In that charged atmosphere, Gianelle's pattern of repeated extramarital relationships with multiple women both in and out of the office, including with Plaintiff, and the requirement that Plaintiff and other employees cooperate in hiding Gianelle's sexual misbehavior from Gianelle's wife who also worked at YDI, were prominent and hostile features of the work environment.

24. That Plaintiff's termination in 2018 was driven by illegal motives is further supported by the lack of any progressive discipline before the termination and the fact that, at around the time of the termination, Gianelle told Plaintiff that he believed that Plaintiff was not

complying in his efforts to hide his extramarital affairs from his wife, and that as a consequence, he was approving Plaintiff's termination of employment.

25. The sexual conduct directed against Plaintiff was unwelcome, severe and pervasive, and was offensive and abusive enough to amount to a hostile work environment. Plaintiff also suffered an adverse tangible employment action because of the unlawful termination.

## COUNT I
## (SEXUAL HARASSMENT)

26. Plaintiff incorporates by reference all of the preceding paragraphs as if fully stated herein.

27. In violation of Title VII, Defendants discriminated against Plaintiff on the basis of her sex by creating a sexually hostile work environment as more fully described above, which subjected her to different and worse treatment than males.

28. In violation of Title VII, Defendants discriminated against Plaintiff by demanding sexual favors as a *quid pro quo* condition of Plaintiff's employment and/or continued employment, which also subjected her to different and worse treatment than males. Defendants' actions reasonably conveyed the message to Plaintiff that sexual intercourse was a requirement and a condition of her employment or continued employment at YDI. Such behavior also interfered with Plaintiff's ability to perform her job and to command respect from coworkers and others in the organization.

29. Defendant Gianelle's misconduct must be attributed and imputed to YDI due to Gianelle's position and authority as the highest-ranking person, principal and alter-ego of YDI. Gianelle, acting in those capacities, had the right and the ability to take tangible actions against

Plaintiff in connection with her job, and in fact did so by his involvement in and approval of her termination of employment.

30. YDI permitted, if not encouraged, the unlawful sexual harassment. YDI had no effective policy prohibiting sexual harassment by Gianelle, its highest-ranking person. YDI also had no effective means for employees to bypass Gianelle with a complaint of sexual harassment by him, and YDI failed to take any effective remedial action to prevent, correct or stop Gianelle's unlawful and offensive sexual behavior, either before or during his misconduct toward Plaintiff. YDI was on notice or should have been on notice of Gianelle's predatory sexual propensities in the workplace, because of his position as the highest-ranking person, principal and alter-ego of YDI, and because Plaintiff was not the first employee of YDI with whom Gianelle had had a sexual relationship. By not taking any remedial action to curb Gianelle's predatory behavior, YDI placed Plaintiff at risk of harm from Gianelle.

31. The unlawful behavior directed at Plaintiff was done intentionally, with actual malice and/or with reckless indifference to the federally protected rights of Plaintiff to be free of sexual harassment in the workplace, and with the conscious intention of causing Plaintiff shame, embarrassment, humiliation and other injury.

32. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer emotional injury and monetary damages, including the loss of her employment, damage to her career, loss of salary and benefits, humiliation, shame, anguish, anxiety, fear, helplessness, loss of self-esteem and related emotional pain and suffering.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment on her behalf against Defendants, and:

    A.    find and hold that Defendants discriminated against Plaintiff on the basis of her sex by creating a sexually hostile work environment, which subjected Plaintiff to different and worse treatment than males, in violation of Title VII;

    B.    find and hold that Defendants discriminated against Plaintiff on the basis of her sex by demanding sexual favors as a *quid pro quo* condition of her employment or continued employment, which subjected Plaintiff to different and worse treatment than males in violation of Title VII;

    C.    order Defendants to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, and prejudgment interest, in amounts to be determined at trial;

    D.    order Defendants to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices, including but not limited to emotional pain, suffering, depression, inconvenience, loss of enjoyment of life, embarrassment, degradation, and humiliation, in amounts to be determined at trial;

    E.    order Defendants to pay Plaintiff punitive damages, in amounts to be determined at trial;

    F.    award Plaintiff her attorneys' fees and costs associated with this case and with the administrative proceedings before this case; and

    G.    grant such other and further relief as the Court deems proper.

### COUNT II
### (MEDICAL MALPRACTICE)

33.    Plaintiff incorporates by reference all of the preceding paragraphs as if fully stated herein.

34. As a medical practitioner in a health provider's office, and as Plaintiff's treating physician, Gianelle owed a duty of care to treat Plaintiff with respect and in a professional manner, and to refrain from engaging in conduct that would cause Plaintiff mental, physical, and emotional injury. Gianelle also owed a duty to exercise ordinary and accepted medical care and skill in treating Plaintiff, which duty including maintaining appropriate and accepted physician-patient boundaries between himself and Plaintiff, and to abide by recognized standards of medical ethics.

35. Gianelle breached these duties by negligently engaging in inappropriate and unethical sexual contact with Plaintiff, which sexual contact served no medical or therapeutic purpose, and caused Plaintiff to suffer severe mental, physical and emotional injury. Gianelle's inappropriate and unethical sexual contact with Plaintiff, during medical visits and otherwise, also violated appropriate and accepted physician-patient boundaries. By engaging in sex with Plaintiff, Gianelle ignored and neglected Plaintiff's underlying medical problems for which she was seeking treatment, and instead exploited and preyed upon Plaintiff's vulnerabilities, focusing improperly on sexual gratification for himself, which included discussing his own sexual fantasies with Plaintiff, exerting his power over Plaintiff as her physician, and making sex a condition of providing Plaintiff with medical care and treatment.

36. Plaintiff was not contributorily negligent, but instead, she relied upon the expertise of Gianelle to provide treatment that conformed to accepted standards of medical care. Furthermore, at all times relevant, Plaintiff was a vulnerable adult with serious health issues, and she was dependent upon Gianelle for both her job and important aspects of her healthcare, all of which rendered her unable to consent to Gianelle's illicit and improper sexual misconduct. Gianelle knew or should have known that Plaintiff was not capable of consenting to engaging in

sexual contact with him because of the nature of the physician-patient relationship, and because Plaintiff's severe health condition rendered her vulnerable to exploitation.

37. As a direct and proximate result of Gianelle's breach of applicable standards of medical care and medical ethics, Plaintiff has suffered and will continue to suffer severe physical, emotional, and psychological injuries, mental anguish, fear, shame, humiliation, anxiety, helplessness, loss of self-esteem and psychological trauma, and she has been precluded from attending to her normal activities, duties, and pursuits.

38. At the time Gianelle committed the acts complained of, he was an officer, employee, agent, servant and owner of YDI. Gianelle's misconduct must be attributed and imputed to YDI due to Gianelle's position and authority as the highest-ranking person, principal and alter-ego of YDI.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment on her behalf against Defendants for $1 million compensatory damages, plus costs and interest, in addition to such other and further relief as the Court deems proper.

## COUNT III
## (NEGLIGENT SUPERVISION AND RETENTION v. YDI DEFENDANTS)

39. Plaintiff incorporates by reference all of the preceding paragraphs as if fully stated herein.

40. At the time Gianelle committed his inappropriate and unlawful acts against Plaintiff as described previously in this Complaint, he was an officer, employee, agent, servant and owner of YDI.

41. Gianelle's acts committed against Plaintiff were for no valid medical or therapeutic purpose, but rather were to satisfy his own sexual gratification, to exert power over Plaintiff and

to exploit her vulnerabilities. Such acts posed an unreasonable threat to Plaintiff, a patient and employee who came into contact with Gianelle.

42. YDI had actual or constructive knowledge of Gianelle's conduct in that Gianelle, as the highest-ranking person, principal and alter-ego of YDI, was aware of his own conduct, which must also be imputed to YDI due to his position. Upon information and belief, Gianelle's misconduct toward Plaintiff was known by other officers, directors and/or owners of YDI, as well.

43. YDI permitted, if not encouraged, the unlawful sexual relationship between Gianelle and Plaintiff. YDI had no effective policy prohibiting sexual relationships by Gianelle with patients and employees of YDI. YDI also had no effective means for patients and employees to bypass Gianelle with a complaint of sexual misconduct by him, and YDI failed to take any effective remedial action to prevent, correct or stop Gianelle's unlawful and offensive sexual behavior, either before or during his misconduct toward Plaintiff.

44. YDI was on notice or should have been on notice of Gianelle's predatory sexual propensities, because of his position as the highest-ranking person, principal and alter-ego of YDI, and because Plaintiff was not the first employee of YDI with whom Gianelle had had a sexual relationship. By not taking any preventive or remedial action to curb Gianelle's predatory behavior, YDI placed Plaintiff at risk of harm from Gianelle.

45. Despite being aware that Gianelle was engaging in unlawful and inappropriate sexual contact with Plaintiff, YDI continued to employ Gianelle, and continued to allow Gianelle to treat Plaintiff as her physician, and to be involved in the decision to terminate Plaintiff's employment.

46. The injuries suffered by Plaintiff were proximately caused by YDI's failure to adequately supervise Gianelle, and its failure to terminate him from his employment.

47. As a direct and proximate result of YDI's failure to adequately supervise Gianelle, and its failure to terminate him from his employment, Plaintiff has suffered and will continue to suffer damage to her career, loss of salary and benefits, severe physical, emotional, and psychological injuries, mental anguish, fear, shame, humiliation, anxiety, helplessness, loss of self-esteem and psychological trauma, and she has been precluded from attending to her normal activities, duties, and pursuits.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment on her behalf against Defendants Chesapeake Medical Solutions, LLC and Chesapeake Medical Solutions, P.A. (both trading as YDI) for $1 million compensatory damages, plus costs and interest, in addition to such other and further relief as the Court deems proper.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial.

Respectfully submitted,

_____/s/_____
Julie C. Janofsky, Bar No. 02622
FEDDER & JANOFSKY LLC
2650 Quarry Lake Drive - Suite 100
Baltimore, MD 21209
410.415.0082/ Fax:  410.415.0085
jjanofsky@mdcounsel.com


_____/s/_____
Michael S. Warshaw, Bar No. 09588
ROYSTON, MUELLER, MCLEAN & REID, LLC
102 W. Pennsylvania Avenue – Suite 600
Towson, MD 21204
410.823.1800
MWarshaw@rmmr.com

Attorneys for Plaintiff