IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-19-2670 |
| CHESAPEAKE MEDICAL SOLUTIONS, LLC, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Jane Doe[1] ("Plaintiff") filed this case against Chesapeake Medical Solutions, LLC ("the YDI LLC"), Chesapeake Medical Solutions, P.A. ("the YDI P.A.") (together "the YDI Defendants"), and Dr. Walter Gianelle (collectively, "Defendants"), alleging three counts: sexual harassment, medical malpractice, and negligent supervision and retention. ECF 1. Defendants filed a Motion to Dismiss and/or for Summary Judgment, ECF 13, along with a Memorandum of Law in support thereof, ECF 13-1 (collectively, "the Motion"). This Court has considered that Motion, along with Plaintiff's Opposition, ECF 17, and Defendants' Reply, ECF 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

**I.  FACTUAL BACKGROUND**

The facts below are derived from Plaintiff's Complaint and accepted as true for the purposes of this Motion. The YDI LLC and the YDI P.A. do business as six urgent care medical facilities on the Eastern Shore known as "Your Doc's In," ("YDI"). ECF 1, ¶¶ 5, 6. Dr. Gianelle

---

[1] Plaintiff has filed a motion seeking to proceed by pseudonym throughout the pendency of this litigation. ECF 2. That motion has not yet been fully briefed. Accordingly, this Court shall continue to refer to Plaintiff as "Jane Doe" at this stage, out of an abundance of caution.

is a physician and "the highest ranking person, principal, and alter-ego of the YDI organization." *Id.* ¶ 7.

In 2011, YDI hired Plaintiff to manage one of its medical care facilities. *Id.* ¶ 12. Plaintiff transformed a troubled facility into the most successful YDI branch, and received praise for her performance. *Id.* In or around 2013, Plaintiff was diagnosed with a "life-threatening" illness requiring extensive treatment, including an organ transplant. *Id.* ¶ 13. Dr. Gianelle became involved in Plaintiff's care as "a trusted medical advisor and friend to Plaintiff." *Id.*

Beginning in 2015, Dr. Gianelle "began to groom Plaintiff for sex by confiding in her about extremely personal sexual matters not ordinarily shared in a normal employer-employee or a doctor-patient relationship." *Id.* ¶ 14. In or around October, 2015, while Plaintiff remained quite ill, Dr. Gianelle "proposed a secret affair with Plaintiff, promising to take care of Plaintiff and to protect her employment at YDI." *Id.* ¶ 15. Plaintiff alleges that, because of her illness, she was entirely dependent on Dr. Gianelle for her job and for "important aspects of her local medical care on the Eastern Shore," so she "was not in a position to refuse sex" with him. *Id.* ¶ 16.

Plaintiff alleges that during the course of her illness, Dr. Gianelle performed health care procedures on her, "sometimes demanding sex as a form of compensation afterwards." *Id.* ¶ 17. She cites two incidents of medical care being provided:

> On one occasion, Plaintiff suffered a hernia, which Gianelle attempted to repair at YDI's Easton, Maryland clinic. The repair attempt was unsuccessful. Nevertheless, Gianelle demanded that Plaintiff have sexual intercourse with him in the clinic. No record was made of either Plaintiff's patient visit to YDI for the hernia or Gianelle's attempted repair of it. . . .
>
> After that visit, Gianelle also saw Plaintiff at YDI's Easton, Maryland clinic in order to repair Plaintiff's surgical incision that had opened. Even though Plaintiff was still in no physical condition to have sexual intercourse following that procedure, and was still under the surgeon's instructions not to have sexual intercourse, Gianelle nevertheless demanded and received sex in the clinic, as a form of compensation for the procedure.

2

*Id.*

In 2016, another YDI physician fired Plaintiff, without warning. *Id.* ¶ 18. In 2017, according to Plaintiff's Complaint, Dr. Gianelle arranged for Plaintiff to be rehired into a different position, and then promoted her to a higher-ranking managerial position in July, 2017. *Id.* Plaintiff alleges that "[s]ex with Gianelle both in and out of the office was a *quid pro quo* condition of Plaintiff's re-employment and continued employment at YDI." *Id.* ¶ 21.

Plaintiff and Gianelle continued their sexual relationship into December, 2017, when Dr. Gianelle ended the relationship. *Id.* ¶¶ 18, 20. Plaintiff alleges that even after Dr. Gianelle terminated the affair, he expected her to be complicit in covering up his extramarital affairs from his wife as a condition of continued employment. *Id.* ¶ 23. Plaintiff alleges that Dr. Gianelle's sexual behavior created a severe and pervasive hostile work environment for her. *Id.* ¶ 25.

Plaintiff alleges that her ultimate termination in 2018 was driven by illegal motives, because she had not been subjected to any progressive discipline. *Id.* ¶ 24. Instead, Dr. Gianelle told her that he approved her termination because she had not complied with his efforts to hide his extramarital affairs from his wife. *Id.*

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment. ECF 13. A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged

3

by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint,'" *Goodman*, 494 F.3d at 464 (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

5

### B. Motion for Summary Judgment

Defendants attach declarations and other exhibits to their motion, and ask, in the alternative, that summary judgment be granted in their favor. ECF 13. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Relevant to this case, summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery.

In this case, counsel for Plaintiff filed a "Rule 56(d) Declaration." ECF 17-8. In the declaration, counsel explains that Plaintiff cannot fully present facts essential to opposition of summary judgment without discovery to obtain personnel records, employee evaluations, internal correspondence, and office policies, in addition to depositions of Plaintiff's co-workers about various workplace incidents. *Id.* As described below, as to Plaintiff's sexual harassment/Title VII claim, this Court finds that the declaration comports with the requirement of Rule 56(d), because the additional evidence sought potentially could create a "genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir.

1995). Accordingly, Defendants' Motion will be considered as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## III. ANALYSIS

### A. Count One: Sexual Harassment

Plaintiff's Complaint alleges various forms of actionable conduct under Title VII: "*quid pro quo*" harassment culminating in wrongful termination, and a hostile work environment. ECF 1, ¶¶ 27-28. To survive a motion to dismiss on a claim of *quid pro quo* discrimination, an employee must sufficiently allege:

1. The employee belongs to a protected group.

2. The employee was subject to unwelcome sexual harassment.

3. The harassment complained of was based upon sex.

4. The employee's reaction to the harassment affected *tangible aspects* of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. . . .

5. The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment and took no effective remedial action.

*Okoli v. City of Baltimore,* 648 F.3d 216, 222 (4th Cir. 2011) (emphasis in original) (quoting *Brown v. Perry,* 184 F.3d 388, 393 (4th Cir. 1999)).

Taking all of Plaintiff's allegations as true, as this Court must in weighing the merits of a motion to dismiss, Plaintiff has adequately stated a Title VII claim of *quid pro quo* harassment. Her allegations that Dr. Gianelle demanded and obtained sexual favors as a condition of her employment, ECF 1, ¶¶ 16, 18-19, 21-23, 28, provide a quintessential example of *quid pro quo* harassment, and thus survive a motion to dismiss. Similarly, Plaintiff's allegations that her

termination arose from her coerced sexual involvement with Dr. Gianelle suffice, when taken as true for the purposes of a motion to dismiss, to state an actionable claim. *See id.* ¶ 24.

The Court is well aware that the evidence attached by Defendants, and the text messages attached by both parties, can be interpreted to suggest that the chances of Plaintiff's recovery on a theory of *quid pro quo* harassment might be slight. *See, e.g.*, ECF 13-2; ECF 17-4. The text exchanges appear to depict a fully consensual sexual relationship, and indicate that, at times, Plaintiff initiated, and indeed encouraged, sexual contact, even during times of medical treatment for her various conditions. *See, e.g.*, ECF 17-4 at 12 (Plaintiff texting Dr. Gianelle, "White blood cell count high but coming back next Monday for repeat blood work. Doctor said I needed you to make love to me, think it will be in the discharge paperwork . . ."); *id.* at 4 (Plaintiff texting Dr. Gianelle, "Hernia is not hurting like yesterday! Belly button doesn't feel as hard, could this be because I am still in bed? You were so sweet to me and gentle. Of course I love your hands on me!!! I love you so much!!"). The text messages show that the sexual relationship continued after Plaintiff's initial termination from YDI by another physician, undermining the notion that Plaintiff tolerated the sexual contact only to preserve her employment. *See id.* at 26-29. In addition, Defendants note that Plaintiff's voluntary return to YDI, after her initial termination and despite having secured other employment at another medical facility, undermines the plausibility of her sexual harassment claim.[2] ECF 13-1 at 3. But as *Twombly* states, at the motion to dismiss stage, a plaintiff's burden is quite minimal, and the complaint is sufficient as long as its allegations, taken

---

[2] The text messages also cast some doubt on Plaintiff's allegation that Dr. Gianelle, instead of his spouse, Angela, arranged for Plaintiff's return to employment at YDI. *See* ECF 17-4 at 42 (Plaintiff texting Dr. Gianelle, "Should I turn down the job Angela has offered? Perhaps I should call and explain why I shouldn't take it. Would that make you happy? Just want to fix whatever I have done."); *id.* (Dr. Gianelle texting Plaintiff, "As far as job, should take it if it works for you. Of course would love to have you back and Angela very excited for you two to be working together.").

as true, contain enough facts to state a cognizable claim, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." 550 U.S. at 556 (internal quotations omitted) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Even where Plaintiff might have an uphill battle surviving a summary judgment motion after discovery, the complaint is not subject to dismissal if it meets the minimal standards elucidated above.

Plaintiff's claim of a hostile work environment is less successful. To establish a hostile work environment, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Further, among other elements, a plaintiff must prove that "the harassment was based on [the plaintiff's] race, color, religion, national origin, or age." *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006). A hostile work environment cannot be shown by establishing "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [a plaintiff's] supervisor," *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir. 2000).

Plaintiff's allegations, even when assumed to be true, fall in the latter category. Although Plaintiff alleges that the "sexually hostile work environment . . . subjected her to different and worse treatment than males, in violation of Title VII," her allegations essentially amount to the fact that her sexual relationship with Dr. Gianelle, and the aftermath of the relationship in which she was asked to cover up his extramarital relationships, created an uncomfortable work environment. ECF 1, ¶¶ 23, 28. Assuming those allegations to be true, they do not establish a hostile work environment. *See Campbell v. Masten,* 955 F. Supp. 526, 527-28, 530 (D. Md. 1997)

(finding that post-relationship workplace conduct relating to a sexual relationship between employee and supervisor, including pressure to conceal the relationship from the supervisor's spouse, did not amount to a hostile work environment). Plaintiff does not allege widespread knowledge of the affair by co-workers or comments made or actions taken in the workplace to render it "permeated with discriminatory intimidation, ridicule, and insult." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21). Accordingly, Plaintiff's hostile work environment claim is subject to dismissal.

Plaintiff's Title VII claim, however, is only viable against her employer, and not against Dr. Gianelle. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) (holding that there is no individual liability under Title VII). In order to qualify as an employer for purposes of Title VII liability, an employer must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (2012). Defendants allege that the YDI LLC is a holding entity for the trademark and trade name "Your Doc's In," and that it has no employees. *See* ECF 13-1 at 11; ECF 13-3, ¶ 7. At the motion to dismiss stage, however, this Court must accept as true the allegation in Plaintiff's Complaint, which states that she performed work for both entities. ECF 1, ¶ 9. Discovery on the relationship between Plaintiff and the two YDI Defendants should permit the issue to be resolved definitively at the summary judgment stage.

In contrast, however, this Court declines to permit discovery as to issues pertaining to piercing the corporate veil. Plaintiff has made no allegations to suggest that the corporate entities are inadequately capitalized, that there is a comingling of corporate assets with the assets of Dr. Gianelle, that there are non-functioning officers and directors, that the corporations are insolvent, or that corporate records are not properly kept. *See Hildreth v. Tidewater Equip. Co.,* 378 Md.

724, 735 (2003) (listing the factors to be considered to determine whether the corporate veil should be pierced). In the absence of any allegations or indication that piercing the corporate veil would be necessary to prevent injustice, discovery into those factors is unnecessary and irrelevant. In sum, Plaintiff's Title VII claim will be dismissed as to the individual defendant, Dr. Gianelle, but the YDI Defendants' Motion to Dismiss Count One will be granted in part and denied in part.

### B. Count Two: Medical Malpractice

To state a claim for medical malpractice under Maryland law, a plaintiff must allege (1) evidence of the applicable standard of care, (2) evidence to determine that the standard has been violated, and (3) evidence establishing a causal relationship between the violation and injury to the plaintiff. *See Univ. of Md. Med. Sys. Corp. v. Malory,* 143 Md. App. 327, 338 (2001) (quoting *Weimer v. Hetrick,* 309 Md. 536, 553 (1987)). Plaintiff's claim of medical malpractice hinges on the fact that, according to her allegations, Dr. Gianelle demanded sex in exchange for medical treatment, and occasionally insisted on sexual intercourse at times when such activity contravened other medical advice. ECF 1, ¶¶ 16-17.

The law regarding the interplay between ethical violations and medical malpractice, in the context of a sexual relationship between doctor and patient, is somewhat sparse. Under Maryland law, there is no question that engaging in sexual relations with a patient violates the ethical standards governing the medical profession. *See Clemente v. Roth,* Civil No. WGC-01-CV-865, 2005 WL 4099829, at *9 (D. Md. Mar. 30, 2005) ("The Court of Appeals of Maryland has found that a physician violates medical ethical standards by having sexual relations with a patient under his care.") (citing *Finucan v. Md. Bd. of Physician Quality Assurance,* 380 Md. 577, 599-600 (2004)). The *Finucan* Court stated, "The facts of this case amply illustrate the reasons underlying the ethical prohibition against physician-patient sex." 380 Md. at 599. However, no Maryland

case, other than *Clemente* in this Court, considered whether such an ethical violation also constitutes medical malpractice.

In *Clemente,* the Court determined that a physician does not commit malpractice by engaging in a sexual relationship with a patient, despite the ethical breach. 2005 WL 4099829, at *12. The Fourth Circuit affirmed, by unpublished *per curiam* opinion, the rationale in *Clemente,* stating:

> As is relevant here, the court concluded that Dr. Cardany's sexual relationship with Prentice would not constitute medical malpractice under Maryland law. The court found it persuasive that courts from other jurisdictions had held almost unanimously that, other than a mental health professional or a doctor who essentially takes on the role of a mental health professional, a doctor who does not induce his patient to have sexual relations with him as necessary for medical treatment does not commit medical malpractice simply by engaging in sexual relations with his patient. *See Gunter v. Huddle*, 724 So.2d 544, 546 (Ala. Civ. App. 1998); *Korper v. Weinstein*, 57 Mass. App. Ct. 433, 783 N.E.2d 877, 879-80 (2003); *Odegard v. Finne*, 500 N.W.2d 140, 143 (Minn. Ct. App. 1993); *Iwanski v. Gomes*, 259 Neb. 632, 611 N.W.2d 607, 614 (2000); *Darnaby v. Davis*, 57 P.3d 100, 104 (Okla. Civ. App. 2002). *But see Hoopes v. Hammargren*, 102 Nev. 425, 725 P.2d 238, 242-43 (1986) (holding that patient who engaged in consensual sexual relations with her doctor while they had an ongoing doctor-patient relationship may establish liability against doctor for breach of fiduciary duty if she shows that the doctor "held a superior authoritative position in the professional relationship," "that, as a result of [the patient's] illness, she was vulnerable," and that the doctor proximately caused her harm by "exploit[ing] the vulnerability").

177 F. App'x 999, 1002 (4th Cir. 2006). Since the Fourth Circuit decided *Clemente* in 2006, Maryland has not further addressed the issue of whether a sexual relationship between a doctor and a patient constitutes medical malpractice. The few cases decided in other jurisdictions have continued to follow the same pattern as the cases decided pre-*Clemente:* sexual relationships between physicians and patients generally do not constitute medical malpractice, unless (1) the doctor is specifically providing psychiatric or mental health treatment to the patient or (2) the doctor portrays the sexual activity to be a part of the required medical treatment for the patient's condition, in order to induce the patient's consent. *See, e.g., Ortegoza v. Kho,* Civil No. 12-cv-

00529-L-KSC, 2013 WL 12071637, at *3-4 (S.D. Cal. Dec. 4, 2013) (finding physician-patient sexual relationships to constitute medical malpractice under California law only where "the physician engaged in sexual contact on the pretext that it was a necessary part of the treatment") (citations omitted); *Thierfelder v. Wolfert,* 617 Pa. 295, 339 (2012) ("[W]e decline to expand the potential malpractice liability of general practitioners to include an absolute duty, derived from the duty of mental health specialists, to avoid sexual relations with patients in circumstances where they have rendered some degree of mental and emotional treatment to the patient.").

In this case, there are no allegations that Dr. Gianelle treated Plaintiff for mental health conditions, or portrayed sexual activity to be part of her medical treatment. The two specific types of treatment Plaintiff alleges in her Complaint, an attempted hernia repair and repair of a surgical incision, are unrelated to her mental health. *See* ECF 1, ¶ 17. Plaintiff makes no allegations that she ever saw Dr. Gianelle for a mental health condition. Although Plaintiff's Complaint alleges that she grew to rely on him emotionally, it does not allege that he provided therapy or any type of mental health medical treatment. *Id.* ¶ 19. Further, Plaintiff does not allege that Dr. Gianelle suggested that their sexual contact was therapeutic in nature, or was required as part of her medical treatment. While the actions Plaintiff alleges, if proven, appear to be in clear violation of medical ethical standards prohibiting sexual involvement between physicians and their patients, those actions do not amount to medical malpractice under governing law. Because Plaintiff alleges, however, that Dr. Gianelle provided other unspecified medical treatment to her on various occasions, this Court will dismiss Plaintiff's medical malpractice claim without prejudice. *See 180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638 (D. Md. 2009) (noting that the trial court has discretion to dismiss a plaintiff's claims on a Rule 12(b)(6) motion with or without prejudice).

### C. Count Three: Negligent Retention and Supervision versus the YDI Defendants

Because Plaintiff's claim for medical malpractice is subject to dismissal, her claim for negligent retention and supervision also fails. "[I]t is well established that Title VII violations do not qualify as tortious conduct for the purposes of claims of negligent hiring, training, retention, or supervision, because these claims must be based on common law injuries." *Russell v. Russel Motor Cars Inc.*, 28 F. Supp. 3d 414, 419-20 (D. Md. 2014) (quoting *Brown v. The Marjack Co., Inc.*, No. AW-08-168, 2010 WL 419389, at *6 (D. Md. Jan. 29, 2010)). Because Plaintiff's Title VII claim is the only claim surviving the motion to dismiss, Plaintiff cannot premise a negligent retention and supervision claim on her Title VII cause of action.

Additionally, the Court notes that Plaintiff's allegation of the negligent retention and supervision of Dr. Gianelle is inconsistent with her allegation that Dr. Gianelle is the "owner, highest-ranking person, principal and alter-ego" of YDI. ECF 1, ¶¶ 7, 40. Assuming the truth of those allegations, Plaintiff essentially seeks to hold Dr. Gianelle liable for negligently retaining or supervising himself. *See Russell,* 28 F. Supp. 3d at 420 ("And it does not appear that Butler could be held liable for negligently hiring or supervising himself in any event."). Accordingly, Count Three must be dismissed.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss and/or for Summary Judgment, ECF 13, will be GRANTED IN PART and DENIED IN PART. A separate implementing Order follows.

Dated: December 2, 2019
/s/
Stephanie A. Gallagher
United States District Judge